IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LEAH MONIQUE ("NIKKI") FITZGERALD, individually; and LEAH MONIQUE ("NIKKI") FITZGERALD and BRIAN W. FITZGERALD, husband and wife, in their capacities as parents, guardians, and next best friends of M.D.M.F. and A.C.R.F., minor children, | ) ) ) ) ) ) ) ) | Case Number CIV-07-101-C |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| THE BOARD OF COUNTY COMMISSIONERS FOR THE COUNTY OF POTTAWATOMIE COUNTY, a political subdivision of the State of Oklahoma; et al., | ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs filed the present Petition[1] pursuant to 42 U.S.C. § 1983 asserting a number of federal and state law claims arising out of an altercation between Plaintiffs and the Pottawatomie County Sheriff's Department. The case was removed to federal court on January 1, 2007. Defendants filed three separate motions for summary judgment, all of which are addressed herein.

---

[1] Plaintiffs originally filed this action in state court. Accordingly, the initiating pleading is properly referenced as a Petition. The Court will continue that designation throughout this Order for clarity.

# BACKGROUND

On August 18, 2005, the Pottawatomie County Sheriff's Office received a teletype from officials in Alaska listing Jessie New, the sister of Plaintiff Nikki Fitzgerald (hereafter Plaintiff), as "missing person endangered" and her daughter as "missing person juvenile." (See Dkt. No. 71, Ex. 3.)  When Deputy Van Duser arrived at the location listed in the teletype, which was Plaintiff's residence, he saw two adult females, a small child, and what appeared to be two teenagers walk into the house.  Plaintiff came to the door and, according to her, Deputy Van Duser told her he was there to take a child.  Plaintiff claims that she neither confirmed nor denied the presence of Ms. New and her child in the residence, merely telling the deputy that she would happy to comply with a warrant but, in its absence, she would not allow the officers into her home.

Shortly thereafter, Plaintiff went upstairs to change her clothes.  At that point in time, she retrieved all of her identification, her private investigator's badge, her handcuffs, and her firearm, which she put in a holster on her hip.  When she went back downstairs, she let Van Duser and Deputy Rodriguez (the Officers) know that she was carrying a firearm and she gave him her identification.  According to Plaintiff, Van Duser became irate at this point and began yelling at her.  She decided to take her firearm off and place it on a bench behind the front door in view of the Officers.

Sporadic conversations then appear to have occurred between Plaintiff and the Officers for quite some time.  Plaintiff continued to deny the Officers entry into her home,

nor would she permit the Officers to speak with Ms. New or her child. At some point during the exchanges, the Officers telephoned their supervisor, Chief Deputy Patten, to determine how to proceed. Deputy Patten then telephoned Judge Combs, a Pottawatomie County district judge, to get his opinion on how to handle the situation. After informing Judge Combs of the circumstances facing the Officers, the judge gave the Officers authorization to forcibly enter the home and check on the welfare of the missing child. Van Duser then spoke with Defendant Shirey, the acting Sheriff, who told him to comply with Judge Combs' order. At that point, the Officers, along with other officers present on the scene, kicked down the door to Plaintiff's residence.

According to Plaintiff, an unnamed officer initially handcuffed her. Subsequently, Deputy Van Duser approached her to remove the handcuffs and put on a different set. In the process, he bent her forward onto her dining table, placing his knee in her back while pushing her down. He then pulled her arm up far enough that her shoulder made a popping sound, causing Plaintiff a great deal of pain. He then placed another set of handcuffs on her and pulled her up from the table. At this point, Plaintiff contends that she complained that the cuffs were too tight and were hurting her hand. The Officers did nothing to loosen the cuffs. Plaintiff claims that she was handcuffed in this manner for approximately five hours.

The Officers then searched the home, locating Ms. New, her daughter, and Plaintiff's two children in the attic. Plaintiff was transported to the sheriff's office, where

she was booked on charges of Obstructing an Officer and Harboring a Missing Person. Plaintiff's children were taken to Hope House shelter. The charges against Plaintiff were ultimately dismissed at the preliminary hearing.

On June 27, 2006, Plaintiff contends that men identifying themselves as sheriff's department employees were on her property in the early morning hours, claiming to have been called by the neighbors. When Plaintiff refused to leave her home to speak to the men, they left, leaving ruts in her yard.

Plaintiff and her husband filed the present Petition asserting a number of claims regarding negligent training and supervision, or failure to train and supervise, against the Pottawatomie County Board of County Commissioners (the Board) arising out of both the 2005 and 2006 incidents. Plaintiff also asserts Fourth Amendment claims against Defendants Van Duser, Rodriguez, and Shirey, in their individual capacities, relating to the warrantless entry of her home and her arrest. Finally, Plaintiff asserts a claim of excessive force against Defendants Van Duser and Rodriguez, as well as a state law assault and battery claim against Defendant Van Duser.

### STANDARD OF REVIEW

A motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the litigation under applicable substantive law. Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine only if it is such that a reasonable jury could find in favor of the nonmoving party.  Id.  The moving party bears the burden of demonstrating the lack of a genuine issue about any material facts.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  Once this burden is met, the nonmoving party must then respond and introduce specific facts demonstrating a genuine issue of material fact.  Fed. R. Civ. P. 56(e)(2).  When deciding a motion for summary judgment, the court may only consider admissible evidence and must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'"  Scott v. Harris, 550 U.S. 372, 378 (2007) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)); Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995).

The Supreme Court noted that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The Court went on to explain that, in this situation, there could be no genuine issue of material fact because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

## DISCUSSION

### 1. Plaintiffs' Claims Against the Board

Plaintiff and her husband assert a number of claims against the Board. Plaintiff brings some claims on her own behalf and others on behalf of her two children. Her husband's claims are brought only on behalf of the children. All of these claims against the Board are based on its alleged inadequate training and supervision of the Officers. According to the Tenth Circuit, "[a] . . . municipality may be held liable where there is essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable." Meade v. Grubbs, 841 F.2d 1512, 1528 (10th Cir. 1988). Under Oklahoma law, however, "the Board has no statutory duty to hire, train, supervise or discipline the county sheriffs or their deputies. Consequently, unless the Commissioners voluntarily undertook responsibility for hiring or supervising county law enforcement officers, . . . they were not 'affirmatively linked' with the alleged [constitutional violations]." Id. (internal citation omitted). Plaintiffs do not allege in any way that the Board affirmatively undertook the responsibility for hiring or supervising county law enforcement officers, and therefore their claims against that entity fail as a matter of law and summary judgment in favor of the Board is proper on all of Plaintiffs' claims.

In their response to the Board's Motion for Summary Judgment, Plaintiffs request that, if the Court finds that their claims against the Board are improper, they be granted

leave to formally amend their Petition to assert the same claims against the Pottawatomie County Sheriff's Department. Pursuant to Rule 15 of the Federal Rules of Civil Procedure, plaintiffs may not amend their complaint unless they have either the defendants' written consent or the Court's leave. Fed. R. Civ. P. 15(a)(2). Courts are instructed to "freely give leave when justice so requires." Id. An amendment that changes the party against whom claims are already asserted relates back to the date that the original pleading was filed only if, within 120 days, the party to be brought in received notice such that it will not be prejudiced and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Id. at (c)(1)(C)(ii).

The Court finds that, even if it permitted Plaintiffs to amend their Petition in the requested manner, the claims against the Sheriff's Department would not relate back to the date the Petition was originally filed, and would therefore be barred by the statute of limitations. The Sheriff's Department is not named in any of Plaintiffs' claims, nor is the Sheriff sued in his official capacity such that the Department anticipates having to defend against the current lawsuit. The Department would therefore be prejudiced should the Court permit an amendment at this late stage of the litigation. Because Plaintiffs' amendment would not relate back, it would be barred by the two-year statute of limitations applied to § 1983 actions. See Abbitt v. Franklin, 731 F.2d 661, 663 (10th Cir. 1984) (noting that "all section 1983 claims should be characterized as actions for injury to personal rights . . . [and] the most analogous Oklahoma statute is clearly the two-year

7

limitations period for an injury to the rights of another."). Therefore, the Court will not grant Plaintiffs leave to amend, since amendment in this case would be futile.

## 2. Plaintiff's Claims Against the Individual Officers

### a. Individual Officers' Liability

#### 1. Warrantless Entry of Home[2]

Plaintiff contends that Defendants Van Duser, Rodriguez, and Shirey violated her constitutional rights when they entered her home in search of Ms. New and her daughter because they did not have a warrant and because no exception to the warrant requirement authorizes the entry. The Officers argue that no such violation occurred.

It has long been established that "'searches and seizures inside a home without a warrant are presumptively unreasonable.'" United States v. Gambino-Zavala, 539 F.3d 1221, 1225 (10th Cir. 2008) (quoting United States v. McCullough, 457 F.3d 1150, 1163 (10th Cir. 2006). "An exception to the warrant requirement exists, however, 'when the exigencies [in a situation] . . . make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.'" United States v. Porter, 594 F.3d 1251, 1255 (10th Cir. 2010) (quoting Brigham City, Utah v. Stuart, 547 U.S. 398, 403 (2006). A number of different situations may give rise to exigent

---

[2] Although a careful reading of the Petition does not appear to allege any claims against the individual officers arising specifically out of the warrantless entry of Plaintiff's home, all of the parties briefed the issue at length, under the apparent assumption that such a claim was, in fact, made. Therefore, the Court will treat the Petition as though it alleged a Fourth Amendment claim against the officers in their individual capacities arising out of the warrantless entry of Plaintiff's home.

circumstances, thereby obviating the necessity of a warrant, such as "the hot pursuit of a fleeing felon, the imminent destruction of evidence, the need to prevent a suspect's escape, or the risk of danger to police officers or other people inside or outside the home." United States v. Thomas, 372 F.3d 1173, 1177 (10th Cir. 2004).

Subsequent to the Supreme Court's decision in Brigham City, the Tenth Circuit now employs a two-part test to determine whether exigent circumstances are present in the context of safety risks: "whether (1) the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is reasonable." United States v. Najar, 451 F.3d 710, 718 (10th Cir. 2006). In considering the first prong, courts are instructed to "evaluate the circumstances as they would have appeared to prudent, cautious, and trained officers." United States v. Anderson, 154 F.3d 1225, 1233 (10th Cir. 1998).

Viewing the facts in the light most favorable to Plaintiff, the Court finds that there was an objectively reasonable basis for the Officers to believe that they needed to protect the lives or safety of Ms. New and her daughter. The Officers received information from Alaska state police that Ms. New was missing and endangered and that her daughter was also missing. They indicated that the two individuals might be at Plaintiff's home. Upon arriving at the home, Deputy Van Duser saw two women and a small child walk into the home. However, Plaintiff refused to let the Officers into the home to check on their welfare. Further, during her conversation with the Officers, Plaintiff appeared at the door

and informed the Officers that she had a concealed weapon on her person. Based on the totality of the circumstances, there existed an objectively reasonable basis for the Officers to believe they needed to enter the home to protect the safety of Ms. New and her daughter.

With respect to the second prong of the Najar test, the Court finds that the manner and scope of the search was reasonable. According to Deputy Van Duser's testimony, which is undisputed on this point, the Officers confined their search to areas where people could be hiding. The manner of the search was therefore reasonable.

Plaintiff argues that the lengthy delay between the Officers' arrival at her home and the time when they finally entered the residence to search for the missing individuals negates the existence of any exigent circumstances. According to the Tenth Circuit, "[a] delay caused by a reasonable investigation into the situation facing the officers does not obviate the existence of an emergency." Najar, 451 F.3d at 719. Here, according to Plaintiff's own version of events, the delay was caused by the Officers' attempt to elicit information from her regarding the whereabouts of Ms. New and her daughter, along with Plaintiff's refusal to provide such information. In addition, Plaintiff opened the door to her residence at one point wearing a gun on her belt, which further delayed the Officers' investigation. Approximately one and a half hours elapsed between the time the Officers arrived at Plaintiff's home and the time they entered the residence. The Court finds such a lapse of time to be reasonable given the facts of the case. Accordingly, exigent

circumstances existed permitting the warrantless entry of Plaintiff's home to search for Ms. New and her child, and the Officers are entitled to summary judgment on this basis.

### 2. Unconstitutional Arrest and Detention

In Plaintiff's Petition, she claims that Officers Van Duser, Rodriguez, and Shirey violated her constitutional rights when they arrested her because they had neither a warrant nor probable cause to believe she had committed any crime. It is undisputed that the Officers did not have a warrant for Plaintiff's arrest. However, "a warrantless arrest is lawful under the Fourth Amendment if there is probable cause to believe that the person arrested has committed an offense." Tanberg v. Sholtis, 401 F.3d 1151, 1159 (10th Cir. 2005). An officer has probable cause to arrest if the "facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." Id. (internal citations omitted).

Under Oklahoma law, it is a misdemeanor to "willfully delay[] or obstruct[] any public officer in the discharge or attempt to discharge any duty of his office." 21 Okla. Stat. § 540. Nothing in this statute requires that an arrestee use any physical force in order to be arrested for its violation. See Marsh v. State, 1988 OK CR 206, ¶ 7, 761 P.2d 915, 916. In fact, "words alone may suffice to support a conviction for Obstructing an Officer." Trent v. State, 1989 OK CR 36, ¶ 4, 777 P.2d 401, 402.

The Court finds that the Officers had probable cause to arrest Plaintiff for the crime of Obstructing an Officer. According to her deposition testimony, she would not acknowledge that Ms. New and her daughter were in the residence and would not permit them to come to the door to speak with the Officers. Such actions delayed the Officers in the discharge of their duty, which was to locate the missing individuals and ascertain their safety. See Trent, 777 P.2d at 402-03 (finding sufficient evidence to sustain a conviction for Obstructing an Officer where the defendant, an occupant in a vehicle whose driver was arrested for driving under the influence, repeatedly stated that her brother would drive the vehicle home and refused to leave the scene, on the basis that she hindered the officer's attempt to remove the vehicle from the road and delayed his attempt to test the driver's blood alcohol level). Accordingly, the Officers are entitled to summary judgment on this claim.

### 3. Excessive Force

In Plaintiff's Petition, she asserts claims of excessive force against Officers Van Duser and Rodriguez. When such claims arise out of an arrest, they are analyzed under the Fourth Amendment's standard of "reasonableness." Graham v. Connor, 490 U.S. 386, 395 (1989). Courts are instructed to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396 (internal citations omitted). Courts must consider the specific facts in each case, "including the severity of the crime at issue, whether the suspect poses an

immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

Id. at 396-97. The inquiry is an objective one, and "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id.

Viewing the facts in the light most favorable to Plaintiff, the situation facing the Officers upon entry into the residence was, although serious, not especially dire. At the time Plaintiff was initially handcuffed, the most serious crime for which the Officers had probable cause to arrest her was Obstructing an Officer. While they may have been concerned about the safety of the missing persons they believed were in the home, there was no indication that they were in any specific danger. Plaintiff did have a firearm in the residence, although according to her she had placed it on a bench near the front door prior to the Officers entry. According to Plaintiff, she did nothing to resist arrest and did not attempt to flee the Officers.

Instead, she contends that, after initially being handcuffed by an unnamed officer, Deputy Van Duser came up to her and bent her forward onto her dining table, placing his

knee in her back while pushing her down. In the process of removing the handcuffs, he pulled her arm up far enough that her shoulder made a popping sound, causing Plaintiff a great deal of pain. He then placed another set of handcuffs on her and pulled her up from the table. At this point, Plaintiff contends that she complained that the cuffs were too tight and were hurting her hand. The Officers did nothing to loosen the cuffs. Plaintiff claims that she was handcuffed in this manner for approximately five hours.

The Officers dispute Plaintiff's recitation of the facts. They contend that she never complained that the handcuffs were too tight or that she suffered any pain from the act of being handcuffed. According to Deputy Van Duser's deposition testimony, Plaintiff fought his attempts to handcuff her. He denies putting his knee into her back or pulling her arm back in any way, other than to position it to be handcuffed. Because a factual dispute remains regarding the degree of force actually used by the Officers, the Court is unable to determine at this time whether their actions were objectively reasonable. Plaintiff is therefore entitled to have these claims submitted to a jury for resolution.

### 4. Assault and Battery

Finally, Plaintiff alleges state law claims of assault and battery against Officer Van Duser arising out of the manner in which he handcuffed her. Under Oklahoma law, an individual is liable for battery if "'(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly

14

results.'" Brown v. Ford, 1995 OK 101 n. 34, 905 P.2d 223, 229 n. 34 (overruled on other grounds) (quoting Restatement (Second) of Torts § 13). Similarly, an individual is liable for assault if "'(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension.'" Id. (quoting Restatement (Second) of Torts § 21).

Initially, the Officers contend that they are immune from individual liability for such claims pursuant to the Oklahoma Governmental Tort Claims Act (the Act), 51 Okla. Stat. §§ 151 et seq. This statute provides that "[t]he state, its political subdivisions, and all of their employees acting within the scope of their employment . . . shall be immune from liability for torts." § 152.1(A). The Act defines "scope of employment" to mean "performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority . . . ." § 152(12). Because both assault and battery require that the defendant act intending to cause a harmful or offensive touching, it is clear that they cannot be committed in good faith. The Officers are therefore not entitled to immunity from such claims.

Under Oklahoma law, "an action for assault and battery will not lie for the use of force when . . . 'necessarily committed by a public officer in the performance of any legal duty." Thetford v. Hoehner, No. 05-CV-0405-CVE-FHM, 2006 WL 964754, at *6 (N.D. Okla. Apr. 12, 2006) (quoting 12 Okla. Stat. § 643(1)). As previously noted, a factual

dispute remains regarding whether Deputy Van Duser used reasonable force in effecting Plaintiff's arrest. Accordingly, he is not entitled to summary judgment on this claim.

### b. Absolute Immunity

"[T]he common law provided absolute immunity from subsequent damages liability for *all* persons – governmental or otherwise – who were integral parts of the judicial process." Valdez v. City & County of Denver, 878 F.2d 1285, 1287 (10th Cir. 1989) (internal quotations and citations omitted). This immunity extends to police officers for their actions in implementing a judicial order on the basis that "[o]fficials must not be called upon to answer for the legality of decisions which they are powerless to control." Id. at 1289. "The public interest demands strict adherence to judicial decrees . . . [and] '[p]ublic officials . . . who fail to . . . implement decisions when they are made do not fully and faithfully perform the duties of their offices.'" Id.

It is undisputed that the Officers called Judge Combs and described to him what was occurring at Plaintiff's residence. Based on what the Officers told him, Judge Combs authorized them to enter the residence and attempt to locate the missing child. During his deposition,[3] Judge Combs testified that there was no difference between his authorization

---

[3] On February 1, 2010, the Court granted Plaintiffs' motion to stay consideration of the parties' summary judgment materials pending the deposition of Chief Deputy Patten. When Plaintiffs submitted their supplemental summary judgment materials, they also included excerpts from Judge Combs' deposition, which was taken by Defendants on January 25, 2010, well after the close of discovery, to use at trial. Defendants subsequently filed a Motion to Strike the deposition testimony of Judge Combs, arguing that Plaintiffs did not obtain the Court's leave to submit such testimony in opposition to Defendants' summary judgment motion. The Court finds consideration of Judge Combs' testimony at this stage to be appropriate. His deposition was taken by agreement

and an actual order to enter the home.  (See Combs Dep., Dkt. No. 101, Ex. 2 at 33:7-33:22.)  In addition, Judge Combs testified that had the Officers not entered the home after he had given authorization to do so, he would consider it to be a breach of their duty. Based on the evidence submitted by the parties, the Court finds that, even if the Officers violated Plaintiff's constitutional rights by entering her home without a warrant, they are entitled to quasi-judicial immunity because they were implementing Judge Combs' verbal order.

### c.  Qualified Immunity

The doctrine of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, ___ U.S. ___, 129 S.Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  In determining whether qualified immunity applies, the Court must determine whether the facts shown by Plaintiff demonstrate a constitutional violation and whether the right at issue was clearly established at the time of Defendants' conduct.  Id. at 815-16.  District courts are free to consider these factors in the order most appropriate for resolution of the specific case at issue.  Id. at 818 (overturning the mandate set forth in Saucier v. Katz, 533 U.S. 194 (2001)).  If the Court finds that the Officers violated

of the parties after the close of discovery and is expected to be used during the upcoming trial.  The Federal Rules make no distinction between so-called discovery depositions and trial depositions, and the parties have produced no authority indicating that the Court should treat them differently. Accordingly, Defendants' motion to strike will be denied.

Plaintiff's clearly established rights, the Officers may still be entitled to qualified immunity if they can demonstrate that "'extraordinary circumstances' – such as reliance on the advice of counsel or on a statute – 'so prevented [them] from knowing that [their] actions were unconstitutional that [they] should not be imputed with knowledge of a clearly established right.'" Gomes v. Wood, 451 F.3d 1122, 1134 (10th Cir. 2006) (quoting Roska v. Peterson., 328 F.3d 1230, 1251 (10th Cir. 2003)

## 1. Warrantless Entry of Home

Although this claim was not raised by the Officers, it appears that they are also entitled to qualified immunity on this issue. Prior to entering Plaintiff's residence, Deputy Patten called Judge Combs to determine the proper course of action. According to both Judge Combs' affidavit and his deposition testimony, Judge Combs then told the Officers to enter the residence to check on the welfare of the missing child. Such authorization clearly constitutes legal advice. The Court must therefore determine whether this advice rises to the level of "extraordinary circumstances" such that the Officers are entitled to qualified immunity.

"[W]hether legal advice given to a defendant constitutes 'extraordinary circumstances' depends upon the circumstances of each case." Cannon v. City & County of Denver, 998 F.2d 867, 874 (10th Cir. 1993). In making this determination, courts should consider a variety of factors, such as "how unequivocal, and specifically tailored to the particular facts giving rise to the controversy, the advice was, whether complete

information had been provided to the advising attorney(s), the prominence and competence of the attorney(s), and how soon after the advice was received the disputed action was taken." V-1 Oil Co. v. State of Wyo., Dep't of Envtl. Quality, 902 F.2d 1482, 1489 (10th Cir. 1990) (internal citations omitted).

Based on the evidence presented by the parties, the Court finds that Judge Combs' authorization to enter the residence constitutes "extraordinary circumstances" entitling the Officers to qualified immunity. The Judge's affidavit recites a number of the specific facts giving rise to the incident, and he unequivocally told the Officers to enter the home in an attempt to locate the missing child. Based on both Judge Combs' affidavit and his deposition testimony, it appears that he was apprised of all the pertinent facts surrounding the incident. He was aware that two females, one a minor, had been reported "missing and/or endangered" in Alaska. (See Judge Combs' Aff., Dkt. No. 71, Ex. 5 at ¶ 16.) He knew that Deputy Van Duser saw a child who appeared to be the same age as the one listed in the teletype enter the residence when he pulled into the driveway, but that Plaintiff refused to let him see the child. In addition, he was aware that Plaintiff came to the door armed during the course of her conversations with the Officers. Judge Combs is a Pottawatomie county judge, and therefore is a prominent and competent attorney. Finally, the Officers entered the residence immediately after Judge Combs gave them authorization to do so. Because the Officers were acting in reliance upon the legal advice given by Judge

Combs, it is clear that they are entitled to qualified immunity on Plaintiff's claim of unlawful entry, should any constitutional violation have occurred.

## 2. Excessive Force

With respect to the first prong of the qualified immunity test, the Court finds that Plaintiff's version of events demonstrates a clear violation of her right to be free from the use of excessive force. She claims that, after initially being handcuffed by an unnamed officer, Deputy Van Duser came up to her and bent her forward onto her dining table, placing his knee in her back while pushing her down. In the process of removing the handcuffs, he pulled her arm up far enough that her shoulder made a popping sound, causing Plaintiff a great deal of pain. He then placed another set of handcuffs on her and pulled her up from the table. At this point, Plaintiff contends that she complained that the cuffs were too tight and were hurting her hand. The Officers did nothing to loosen the cuffs. Plaintiff claims that she was handcuffed in this manner for approximately five hours.

In addition, at the time of Plaintiff's arrest, the right to be from excessive force in the manner in which an individual is handcuffed, as well as the right to be free from unduly tight handcuffs, was clearly established. See Fisher v. City of Las Cruces, 584 F.3d 888, 899 (10th Cir. 2009) (finding "no significant analytical distinctions between an injury occurring because an officer fastens handcuffs too tightly and an injury arising out of the officer's manner of apply handcuffs."); Vondrak v. City of Las Cruces, 535 F.3d 1198, 1209 (10th Cir. 2008) (finding the right to be free from unduly tight handcuffs clearly

established as far back as 2003), cert. denied, ___ U.S. ___, 129 S.Ct. 1003 (2009); Cortez v. McCauley, 478 F.3d 1108, 1129 (10th Cir. 2007) (finding this right to be clearly established as early as 2001). Accordingly, the Officers are not entitled to qualified immunity on Plaintiff's excessive force claim.

## CONCLUSION

Accordingly, the Board's Motion for Summary Judgment (Dkt. No. 69) is GRANTED. No claims remain pending against the Board. In addition, no claims asserted on behalf of the children remain pending. The Motion for Summary Judgment filed by Defendant Shirey (Dkt. No. 70) is GRANTED. No claims remain pending against Defendant Shirey. The Motion for Summary Judgment filed by Defendants Van Duser and Rodriguez (Dkt. No. 71) is GRANTED IN PART and DENIED IN PART. They are entitled to summary judgment with respect to Plaintiff's claims regarding the warrantless entry of her home and her warrantless arrest. The excessive force claim against both Defendants Van Duser and Rodriguez, as well as the state law tort claims against Defendant Van Duser, still remain. Finally, Defendants' Motion to Strike (Dkt. No. 102) is DENIED. A judgment will enter at the conclusion of the case.

IT IS SO ORDERED this 2nd day of April, 2010.

_____
ROBIN J. CAUTHRON
United States District Judge